## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.R., N.R., and L.K.**

**No. 21-0138** (Jackson County 19-JA-129, 19-JA-130, and 19-JA-131)

## MEMORANDUM DECISION

Petitioner Mother A.F., by counsel Lauren A. Estep, appeals the Circuit Court of Jackson County's January 19, 2021, order terminating her parental rights to D.R., N.R., and L.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Nic Dalton, filed a response on behalf of the children in support of the circuit court's order. The children's maternal grandparents, A.L. and C.L., by counsel Erica Brannon Gunn, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court violated her due process rights by relying on in camera testimony from the children taken in an earlier guardianship proceeding, granting permanent placement to the maternal grandparents, and denying her a post-adjudicatory improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2019, the respondent grandparents initiated proceedings to obtain legal guardianship of the children. As the guardianship proceedings were ongoing, the grandparents obtained a domestic violence protective order ("DVPO") against petitioner after petitioner "admitted she threatened to burn down [the grandparents'] house, where her [c]hildren were then

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner raises no assignment of error regarding the circuit court's termination of her parental rights. As such, this issue is not addressed herein.

residing." The grandparents also obtained a DVPO against petitioner's husband after credibly testifying that he threatened them with physical violence. Further, the children's guardian ad litem reported during the guardianship proceedings that "the two younger children do not wish to see [petitioner's husband] because they are afraid of him." In August of 2019, the court awarded the grandparents temporary guardianship over the children. The children have remained in the grandparents' home continuously since that time. During the guardianship proceeding, the court heard in camera testimony from the children in October of 2019. The children generally described the parents' drug use and its effects, including the fact that the children would get themselves ready for school while the parents slept. D.R. also described petitioner and her husband taking the children on "trips in the middle of the night . . . to go to a drug dealer's house," which resulted in D.R. having difficulty staying awake at school and being truant. D.R. further disclosed having witnessed petitioner's husband strike petitioner and verbally abuse her, while the other two children described hearing the husband scream at petitioner. The children described the husband as mean, and N.R. indicated that she did not feel safe in his custody. D.R. disclosed that petitioner was physically abusive, having "busted [his] lip" on one occasion. D.R. also indicated that the husband physically abused the children, as he suffered physical abuse himself and witnessed the husband "whip L.K. because she went to the refrigerator" and strike the other children with a belt.

The month after the children's in camera interviews, the DHHR filed a petition alleging that petitioner abused and neglected the children by virtue of drug abuse and exposing them to domestic violence. According to the DHHR, petitioner was charged with a crime related to a theft and "threatened the [children's] caregivers . . . to change their testimony concerning her alleged crime." Following the preliminary hearing in November of 2019, petitioner tested positive for marijuana and admitted to abusing the drug. As petitioner admits in her appellate brief, she continued to test positive for marijuana throughout the proceeding and also tested positive for cocaine and opiates on separate occasions. Petitioner then stipulated to substance abuse that negatively affected her ability to parent at an adjudicatory hearing in June of 2020. The circuit court adjudicated petitioner as an abusing parent.

Eventually, the court proceeded to disposition in regard to petitioner. At one hearing in September of 2020, petitioner moved for in camera testimony of the children. The court deferred ruling on this motion. It does not appear that a ruling ever issued, although it is undisputed that the children did not provide in camera testimony following the motion.

In its dispositional order, the court took judicial notice of several related proceedings, including the guardianship proceedings, and cited to portions of the children's in camera testimony that were relevant to the abuse and neglect. The circuit court also considered that petitioner admitted to ongoing substance abuse, tested positive for drugs several times during the proceedings, but denied that she engaged in domestic violence or suffered from a substance abuse problem that impacted her ability to parent the children. However, the court found that whether petitioner and her husband "perpetrated domestic violence upon one another or upon the [c]hildren is ultimately of no consequence" because "[t]he overriding problem in this case is unrelenting drug use." According to the circuit court, despite having stipulated to substance abuse that negatively impacted her parenting, petitioner claimed that she either had no drug problem or that her use of drugs was not a problem. Because of petitioner's unwillingness to admit that she had a problem and her "utter lack of insight into [her] actions," the court found that there was no reasonable

likelihood that she could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the children's welfare. Therefore, the court terminated petitioner's parental rights.[3] It is from the circuit court's dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in relying on in camera testimony taken during the guardianship proceeding in reaching its decision to terminate her parental rights.[4] It is important to note, however, that petitioner's counsel agreed to a joint order for the circuit court to consolidate the abuse and neglect matter with several other proceedings, including the prior guardianship proceeding in which the court took the testimony at issue. As such, petitioner has waived her right to argue that the circuit court was precluded from considering any evidence introduced in that prior matter. *See Noble*, 223 W. Va. at 821, 679 S.E.2d at 653.

To the extent that petitioner argues that the court should have granted her motion to take additional in camera testimony from the children, we find no error. According to petitioner, the

---

[3]All parents' parental rights were terminated below, with the exception of the father of L.K. According to respondents, the matter against him was dismissed but he was unable to assume custody of the child because of health issues. The permanency plan for the children is either adoption or legal guardianship with the maternal grandparents.

[4]In support of this assignment of error, petitioner also asserts that the petition was somehow deficient because it relied on facts taken from the in camera testimony in setting forth the DHHR's allegations against her. We note, however, that petitioner not only failed to challenge the sufficiency of the petition below, she actively stipulated to her adjudication. As such, she has waived this issue on appeal, and we decline to address it. *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999).").

circuit court's reliance on the children's prior testimony from the guardianship proceeding violated her due process rights because it was taken at a time when she was not represented by counsel. We find that no such violation occurred because the plain language of Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings does not require the children to testify again. According to that rule,

> there shall be a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony and the court shall exclude this testimony if the potential psychological harm to the child outweighs the necessity of the child's testimony. Further, the court may exclude the child's testimony if (A) the equivalent evidence can be procured through other reasonable efforts; (B) the child's testimony is not more probative on the issue than the other forms of evidence presented; and (C) the general purposes of these rules and the interest of justice will best be served by the exclusion of the child's testimony.

The record here is clear that the children were not required to testify anew because the equivalent evidence was available through the transcript of their prior in camera interviews. While petitioner alleges that due process required that her attorney be permitted to submit questions for the children, this argument ignores one important point: counsel is only permitted to submit questions under Rule 8(b) *after* the circuit court determines that in camera testimony is necessary under Rule 8(a). It is true that Rule 8(b) provides that "[t]he parties' attorneys shall be allowed to attend such interviews, except when the court determines that the presence of attorneys will be especially intimidating to the child witness" and that "[w]hether or not the parties' attorneys are permitted to attend the in camera interview, they may submit interview questions and/or topics for consideration by the court." What petitioner fails to recognize, however, is that Rule 8(a) gives the court discretion to refuse to force a child to testify, which it properly exercised below. As such, petitioner, in this case and on these circumstances, did not have a right to submit questions for the children to answer, as she alleges on appeal.

More importantly, the record shows that the evidence petitioner sought to introduce lacked any probative value. On appeal, petitioner alleges that she should have been entitled to cross-examine the children and obtain further testimony from them "to allow a full picture of the circumstances to come to the court's purview" because she denied most of the allegations contained in the children's testimony. However, this is not the argument petitioner advanced below. At the hearing in September of 2020, petitioner's counsel explained that she

> made another motion this week, joint with counsel [for the husband], for that in-camera testimony to be taken. I believe the children are here today to give that testimony. That would be for the limited purpose of, basically, an improvement period, meaning, you know, do they want to maintain a relationship with my client moving forward?

The children's guardian, however, correctly pointed out that the probative value of this testimony could not outweigh the presumed harm to the children, especially considering that the guardian had repeatedly expressed that N.R. and L.K. wanted to see petitioner. The guardian also indicated that he spoke with D.R. again the day before the hearing and that "he does want contact." Given

4

that the guardian was willing to stipulate to the limited facts that petitioner sought to establish through additional in camera testimony, it is clear that the same was unnecessary. As such, we find no error in the circuit court's refusal to grant petitioner's motion to require such testimony.

Next, petitioner argues that the circuit court erred in permitting the children to remain in the maternal grandmother's home after evidence established that the grandmother had a substantial history of abuse and neglect allegations against her and that such placement was not in the children's best interests. In short, we find it unnecessary to address this argument because it entitles petitioner to no relief. Indeed, in her brief to this Court petitioner fails to explain how this alleged error in any way affects her position. Even if this Court were to assume that petitioner is correct that the maternal grandmother is not a fit permanent placement for the children, the fact remains that this does nothing to undermine the termination of petitioner's parental rights. We find, however, that the record does not support petitioner's assertion that either maternal grandparent is unfit to care for the children. On the contrary, the circuit court heard extensive testimony in this regard in both the guardianship proceeding and the resulting abuse and neglect proceeding. Petitioner predicates her argument, in part, on her own testimony, in which she accused the maternal grandmother of engaging in abuse and neglect when petitioner was a child. However, the record shows that petitioner consented to the maternal grandparents caring for the children earlier in the guardianship proceedings. The circuit court also heard evidence of the DHHR's substantiation of abuse and/or neglect in the grandmother's home many years ago in making its decision. Ultimately, petitioner's arguments in support of this assignment of error come down to credibility determinations that we decline to disturb on appeal. *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). As such, petitioner is entitled to no relief.

Finally, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she established that she was likely to fully comply. According to petitioner, she participated in parenting services and was engaged and focused on remedying the conditions of abuse and neglect. Petitioner also cites to testimony from a provider who indicated that petitioner "was confused and upset that she wasn't having visits with her children" and "believed that having visits would be highly recommended to implement the things learned in parenting classes." It is curious that petitioner would question why she was not receiving visits, however, because the court was clear that visits were dependent on petitioner providing negative screens. Despite this requirement, the court found in its dispositional order that "[w]ith one lone exception, . . . [petitioner] failed *every single drug test in this case* for marijuana, once . . . for oxycodone, and one . . . for cocaine." Because of petitioner's continued drug use, she was denied visits with the children. In this regard, we have explained that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Given petitioner's refusal to cease her substance abuse in order to visit the children, it is clear that an improvement period was not proper.

Further, petitioner not only continued to abuse drugs but asserted in the face of this evidence that she did not, in fact, have a drug problem. As this Court has explained,

5

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable *and in making an improvement period an exercise in futility at the child's expense.*

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted) (emphasis added). Based on the foregoing, we find no abuse of discretion in denying petitioner's motion for a post-adjudicatory improvement period. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 19, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 1, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton